# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES MCCONICO, #117395,** : | |
|     **Plaintiff,** : | |
| vs. : | **CIVIL ACTION 20-0314-TFM-N** |
| **MARY COOK,** *et al.*, : | |
|     **Defendants.** : | |

## REPORT AND RECOMMENDATION

This action is before the Court on the following: Plaintiff James McConico's Motion for Leave to File an Amended Complaint (Doc. 32, PageID.78), Amended Complaint (Doc. 31, PageID.73), Motion to Add Defendant Deputy Warden Monica McCoy and Mail Clerk Blakely (Doc. 33, PageID.83), and Motion for Preliminary Injunction (Doc. 34, PageID.88).[1] Upon consideration, it is the recommendation of the undersigned Magistrate Judge, that McConico's Motion for Leave to File an Amended Complaint and Motion to Add Defendant Deputy Warden Monica McCoy and Mail Clerk Blakely be **denied,** and, further that the Motion for Preliminary Injunction be **denied.**

---

[1] This action has been referred to the undersigned for appropriate action pursuant to the order entered June 15, 2020 (Doc. 7, PageID.4), 28 U.S.C. § 636(b)(1)(B), and S.D. Ala. GenLR 72(a)(2)(R).

## I.  Motion for Leave to File an Amended Complaint and Related Filings.

### A. Proceedings.

#### 1. First Amended Complaint.  (Doc. 10, PageID.11)

McConico is proceeding *in forma pauperis* in this action because at the time of filing of the original complaint on May 5, 2020, he met the exception to 28 U.S.C. § 1915(g) requiring that he be in imminent danger of serious physical injury.  In his first amended complaint filed on the Court's § 1983 complaint form, (which he was ordered to file after this action's transfer from the Middle District of Alabama), he named as Defendants Governor Kay Ivey, Commissioner Jefferson Dunn, and Mary Cook, Warden at Fountain Correctional Facility's ("Fountain").[2]  (Doc. 10, PageID.11).  McConico complained that a Covid-19 outbreak at Fountain killed two inmates, and Defendants cannot provide social distancing to protect him because of the overcrowding and will not test for Covid-19 due to the $200 cost per test.  (*Id.* at 4, 8, PageID.14, 18).  He further contended that Defendants are being deliberately indifferent to his need for reasonable medical care for his safety due to the lack of funds and overcrowding.  (*Id.* at 8, PageID.18).  Therefore, Defendants should release him to protect him from dying.  (*Id.*).  As an example of Defendants' inability to protect him from Covid-19 and their refusal to provide a reasonable medical care, three inmates in his dorm became infected with Covid-19 which caused a fourteen-day quarantine of the dorm, and at the end of the quarantine, another inmate had

---

[2] At this writing, Defendant Mary Cook is no longer the warden at Fountain, nor is she the warden at Easterling Correctional Facility.  www.doc.state.al.us/facility

Covid-19 which caused his dorm to be quarantined for another fourteen days. (*Id.*).

For relief, McConico requested his or non-violent inmates' release to create social distancing and to enhance his chance of survival by not becoming infected; release of 10,000 non-violent inmates to house arrest or other programs, which can be paid for by closing unnecessary prisons and laying off unnecessary employees; testing immediately at Fountain and then other ADOC prisons; and stopping inmate transfers immediately to end the spread because Defendants cannot contain or treat Covid-19. (*Id.* at 9, PageID.19).

## 2. Supplemental Complaint. (Doc. 18-1, PageID.45)

Subsequently, on November 30, 2020, McConico filed a Motion to Amend Civil Complaint (Doc. 18, PageID.41) along with the Amendment, Count II (Doc. 18-1, PageID.45). In the Amendment, Count II, McConico alleged that on November 19, 2020, Defendant Cook "retaliatorily transferred [him] for exercising his right to access . . . court to prosecute" this action. (*Id.* at 1, PageID.45). According to McConico, on November 18, 2020, he was in Fountain's law library gathering evidence from inmates about the lack of social distancing, "instructing" inmates about his Covid-19 lawsuit and how they can file their own actions because their lives were in danger, and "reciting" their constitutional amendments verbatim. (*Id.* at 2, PageID.46). Defendant Cook entered the law library and listened. (*Id.*). She stated for him "to do what you want to do." (*Id.*). He explained that they were concerned about their lives being lost due to the failures of her, ADOC, and Defendant Ivey to prevent and to test for Covid-19 and that they were reciting their

3

constitutional amendments. (*Id.*). The next day, without any notice, Defendant Cook told him to pack his property in fifteen minutes for transfer to Easterling Correctional Facility ("Easterling"). (*Id.*). He was unable to take all his legal work, books, and tobacco products, which were confiscated, because Easterling is a nonsmoking facility. (*Id.*).

Because Covid-19 is full-blown at Easterling, and due to his age and lack of social distancing and testing, McConico alleged that he is at high risk for, and is fearful of, contracting Covid-19. (*Id.* at 3, PageID.47). He claimed that Defendant Cook's transfer of him was done in retaliation to prevent further litigation on her failures to prevent the spread of the Covid-19 virus, to stop the gathering of evidence from other inmates to prove his case, to chill his and other inmates' right to file civil actions and to access the courts, and to prevent him from demanding that he is entitled to relief pursuant to Alabama Code § 14-15-10(2)([e or c])(f) (1975) due to overcrowded conditions. (*Id.*). He asserted that the only means of prevention is social distancing, which Defendant Cook cannot provide. (*Id.* at 4, PageID.48).

For relief, McConico sought an order requiring Defendant Cook to return him to Fountain and not to retaliate against him, $250,000 in compensatory damages, $350,000 in punitive damages, and a "leg-monitor release" if Defendant Cook cannot provide social distancing to him and other inmates due to their age. (*Id.*).

McConico's Motion to Amend Civil Complaint was granted, and the Amendment, Count II, is being treated as a supplement to the first amended

4

complaint. (Doc. 26). The Court has directed that the waivers of service of process be sent to Defendants Cook, Ivey, and Dunn. (Docs. 22, PageID.54). Their answer and special report was filed on July 9, 2021. (Doc. 37).

**B. Amendment, Count III and Related Filings.** (Doc. 31 at 1, PageID.73).

### 1. Allegations.

Then, on June 11, 2021, more than a year since he filed this action, the Court received the filings that are now before the Court. (Docs. 31-34). In his Amendment, Count III, McConico alleges that his First and Fourteenth Amendment rights are being violated at Easterling by Deputy Warden Monica McCoy and Mail Clerk Blakely in retaliation for exercising his right of access to courts and for assisting other inmates in their preparation of criminal pleadings and petitions. (Doc. 31 at 1, PageID.73).[3] According to McConico, on May 20, 2021, Defendant McCoy came into Easterling's law library and continued her harassment of him by discussing methods for research and for analyzing decisions with other inmates. (*Id.*). But on this day, she accused McConico of having too much legal work on the table and of talking instead of doing legal work. (*Id.*). Thus, she told McConico that he could not use the law library unless she gave him permission. (*Id.*). A few days later she returned with Captain Danzey and asked about the large trial transcript on the table where McConico works. (*Id.*). McConico said that it belonged to Jamie

---

[3] McCoy and Blakely are identified as the two persons he wants to add as Defendants. (Doc. 33, PageID.83, Motion to Add Defendant Deputy Warden Monica McCoy and Mail Clerk Blakely).

5

Kelly who was seated at a table near the wall. (*Id.*). Defendant McCoy said to Captain Danzey that this is what she was talking about – abuse of the law library and charging other inmates for legal work. (*Id.*). McConico countered that he did not charge for legal work but required inmates learn their constitutional amendments and that he has a right to help other inmates with legal work according to *Bounds v. Smith*. (*Id.* at 2, PageID.74). Defendant McCoy told him to watch himself and directed inmate Kelly to bring his legal papers from the table and step outside. (*Id.*). She examined the papers and discovered they contained words from the trial transcripts that he did not know and their definitions. (*Id.*). She returned inmate Kelly to the law library.[4] (*Id.*).

McConico filed a complaint with Warden John Crow about the harassment and violations of his constitutional rights and requested "his assistance to prevent [a] retaliatory transfer." (*Id.*). Defendant McCoy lied to Warden Crow stating that McConico always talks, (but she did not tell him of their conversation about analyzing the facts and applying them to the law), and that McConico eats in the law library constantly, (but she failed to correct the incident when he was eating a cracker with peanut butter), in addition to making other false statements. (*Id.*).

On June 1, 2021, McConico went to obtain his legal mail from Defendant Blakely. (*Id.*). She opened his legal mail and read it noticing Mary Cook's name as a defendant. (*Id.*). Defendant Blakely and Office Belcher told him to sit down.

---

[4] McConico included a statement that she "realiz[ed] [that] McConico was actually assisting Jamie Kelly without any financial consideration." (Doc. 31 at 2, PageID.74). This conclusion of no financial consideration is not supported by the surrounding statements.

6

(*Id.*). Defendant Blakely went to the front, made copies of it, and gave it to Defendant McCoy. (*Id.*). He looked at the front lobby and saw her with additional papers outside of the envelope heading to the warden's office before she returned to give him his legal mail. (*Id.*). McConico contends that, even though the law allows Defendant Blakely to open his legal mail in his presence, the law does not allow the reading of it, the making of copies, or the showing of it to others. (*Id.*). He contends that Defendant Blakely can pass on privileged information about his criminal and civil cases in violation of his right to privacy and Defendants "McCoy and Blakely are acting in concert" to violate his right to privacy and with "retaliatory objectives. . . . [t]o assist Warden Mary Cook, a friend and co-employee of D.W. McCoy[,] to prevent the successful litigation of this case by McConico." (*Id.* at 3, PageID.75).

Later in the day, Defendant McCoy went to the law library where McConico was "silently" working. (*Id.*). She left and went Captain Danzey's office and "falsely alleged" that he was teaching classes in the law library. (*Id.*). McConico states that he was telling inmates that he does not charge but will help them if they learn their amendments to the Constitution, (which the Court notes contradicts McConico's statement that he was "silently" working). (*Id.*). Afterwards, Captain Danzey tells law clerk James Montgomery that McConico is going to get them all fired and McConico is going to find himself somewhere else. (*Id.*).

Defendant McCoy's actions are alleged to be in retaliation for McConico exercising his right to petition the government for actions taken by Mary Cook, her friend, and for exercising his right of access to courts by assisting other inmates in

7

their preparation of lawsuits concerning Covid-19 in Easterling's law library, which he notes is the same reason that Defendant Cook transferred him from Fountain. (*Id.*).

For relief, McConico seeks an order stating Defendants McCoy and Blakely violated his constitutional rights, issuing injunctive relief preventing his transfer from Easterling[5], and awarding him compensatory and punitive damages in the amount of $100,000.

## 2. Analysis.

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplement pleadings and instructs that "[t]he court should freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). When ruling on a motion to amend, "[a] court may consider several factors when deciding whether to grant a motion to amend, including undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (citations and internal quotation marks omitted). Permission to amend may be denied when the claim, as amended, is subject to dismissal because the claim is futile. *Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441, 444–45 (11th Cir.1985). "[F]utility can refer either to the fact that the joinder rules are not met

---

[5] The Court observes that in the supplement to the first amended complaint, McConico seeks an order transferring him back to Fountain. (Doc. 18-1 at 4, PageID.48).

or to a finding that the claims to be added by or against the party to be joined would be subject to dismissal." *Dahdouh v. Road Runner Moving & Storage Inc.,* 2021 WL 1623027, at *2 (S.D. Fla. 2021) (unpublished). Furthermore, the Court is also under a duty pursuant to 28 U.S.C. § 1915(e)(2)(B) to screen complaints and amendments filed by prisoners and to dismiss the claims that are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i-iii).

Turning to McConico's Amendment, Count III, McConico, as a *pro se* plaintiff, is required to conform to the Federal Rules of Civil Procedure. *Albra v. Advan, Inc.* 490 F.3d 826, 829 (11th Cir. 2007). Rule 20 controls the joinder of parties in a federal civil action. FED.R.CIV.P. 20. Rule 20(a)(2) provides that persons "may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2)(A)&(B) (emphasis added). When Rule 20(a)(2) is not satisfied, misjoinder has occurred, and Rule 21 allows the Court, on its own, at any time, "on just terms, [to] add or drop a party [and] the court may also sever any claims against a party." FED.R.CIV.P. 21. *See Hartley v. Clark,* 2010 WL 1187880, at *3 (N.D. Fla. 2010) (unpublished) ("Rule 20 refers to the same transaction or occurrence not to similar transactions or occurrences."), *adopting with opinion*, 2010 WL 1187879 (N.D. Fla. 2010); *see also Alexander v. U.S.*, 2015 WL 4133309, at *6

9

(N.D. Ala. 2015) (unpublished) (finding claims asserted against out-of-state detention centers are unrelated to a claim against an Alabama detention center and to themselves, and are therefore misjoined and due to be dismissed); *Skillern v. Ga. Dep't of Corr.*, 2006 WL 3246687, at *4 (N.D. Ga. 2006) (unpublished) (denying the proposed first and second amendments that alleged various transactions involving new defendants because they were distinct from the claims in the original complaint and do not involve a question of fact or law common to all defendants and were an improper attempt to join claims to circumvent § 1915(g)"s three-strikes provision); *see also Smith v. Warden, Hardee Corr. Inst.*, 597 F. App'x 1027, 1030 (11th Cir. 2015) (dismissing the complaint for noncompliance with Rule 20(a) when the complaint contained unrelated claims against different defendants).[6]

In Amendment, Count III, Defendants McCoy and Blakely are not Defendants to the original action and are located at Easterling, a prison distinct from Fountain where the first amended complaint as supplemented arises. Defendant McCoy's and Defendant Blakely's addresses are given as Easterling's address, 200 Wallace Drive, Clio, Alabama 36107. (Doc. 32 at 4, PageID.81). Clio is in Barbour County in the Middle District of Alabama, not this District where Fountain is located. McConico's claims against Defendant McCoy arose on May 20, 2021 and stem from his usage of Easterling's, not Fountain's, law library. He claims that he is being retaliated against for exercising his right of access to courts

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

and for assisting other inmates in their preparation of criminal pleadings and petitions. And he claims Defendant Blakely violated his privacy by reading, copying, and distributing his legal mail containing Warden Mary Cook's name. These claims arising at Easterling are not connected to his claims in his first amended complaint as supplemented concerning the lack of protection from Covid-19 at Fountain and to his claim of being transferred from Fountain in retaliation for filing this action. Even though McConico may be raising another claim for retaliation for accessing the courts and a claim for denial of access to the courts based on his experiences at Easterling, as well as a claim for an invasion of privacy, these claims are distinct and arise from a different transaction or occurrence than his claims at Fountain and involve other persons as Defendants. McConico points to this when he states Defendant McCoy's reasons for retaliating against him are the *same reasons* that Defendant Cook had for retaliating against him when she transferred him from Fountain. (Doc. 31 at 3, PageID.75). Same reasons do not equate to arising from the same transactions or occurrences. *Cf. Hartley,* 2010 WL 1187880, at *3 (holding the *same* transaction or occurrence is not the equivalent of *similar* transactions or occurrences).

Moreover, his allegations do not show a connection to Fountain. Once in Amendment, Count III, he conclusorily alleges that Defendants McCoy and Blakely acted "in-concert" with *each* other and then indicates that they, apparently of their own accord, were assisting Defendant McCoy's friend, Mary Cook, "to prevent the successful litigation of this case." (Doc. 31 at 3, PageID.75). This is only instance

11

where a word or words were used that approached a connection to Fountain and Cook, but this is not a connection that rises to the level of a conspiracy and a conspiracy that involved Defendant Cook and her having knowledge of it and having participated in it.  *Bailey v. Bd. of Cnty. Comm'r of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir.) (requirements for a conspiracy), *cert. denied*, 506 U.S. 832 (1992).  In addition, because the facts are different and not arising from the same transaction, occurrence, or series of transactions or occurrences, the questions of law and facts will not be common to all Defendants if Amendment, Count III, were allowed.  *Cf. Hartley,* 2010 WL 1187880, at *3 (finding a defendant was located at another prison from the other defendants, no allegations were made that they acted jointly, incidents were separated by three years, the underlying events are not logically related thereby negating a widespread custom, policy, or practice, and Rule 20's preconditions for permissive joinder, therefore, were not satisfied in the absence of "any logical connective nexus" between defendants).

Because Amendment, Count III, violates Rule 20(a), the allowance of Amendment, Count III, would be futile. (Doc. 31, PageID.73).  Accordingly, McConico's Motion for Leave to File an Amended Complaint (Doc. 32, PageID.78) and Motion to Add Defendant Deputy Warden Monica McCoy and Mail Clerk Blakely (Doc. 33, PageID.83) are due to be denied.[7]

---

[7] McConico's claims against McCoy and Blakely may be filed in a separate lawsuit in the United States District Court for the Middle District of Alabama where venue is proper, realizing though that McConico will have to satisfy 28 U.S.C. § 1915(g).  *See* 28 U.S.C. § 1391(b) (venue provisions).

## II. Motion for a Preliminary Injunction. (Doc. 34, PageID.88)

### A. Motion.

McConico alleges in his unsworn Motion for Preliminary Injunction that he "has no other adequate remedy at law to prevent his arbitrary and capricious transfer from Easterling . . . for exercising his right to petition the government . . . for failure to properly treat him for Covid-19 and [in] retaliation . . . for suing Warden Mary Cook for violating [his] right to assist other inmates in preparing their complaints and pleadings." (Doc. 34, PageID.88). McConico refers mostly to the "Defendants" violating his rights throughout the Motion for Preliminary except when he makes allegations against McCoy that consist of his claims in the proposed Amendment and that she conspired with Blakely to prevent him from prosecuting his lawsuit. (*Id.* at 2-3, PageID.89-90). McConico also adds that Commissioner Dunn and Warden John Crow are Defendants because they have "superior responsibility" for employees McCoy and Blakely, who are untrained or have no respect for institutional regulations because they violate his right to privacy when he receives confidential mail from the court or an attorney[3], and they "have no control over these employees." (*Id.* at 3, PageID.90). Furthermore, "Defendants" are alleged to punish him by transferring him two to three times a year to prevent him from assisting other inmates, to moot his claims, and to punish him for exercising his constitutional rights. (*Id.* at 1-2, PageID.88-89).

McConico maintains that he will suffer more without an injunction being granted because he will not be able to prosecute his action without being retaliated

13

against for exercising his free speech rights and for assisting other inmates. (*Id.* at 4, PageID.91).

## B. Analysis.

### 1. Issues with Identities of Defendants to Preliminary Injunction.

Rule 65 of the Federal Rules of Civil Procedure, which governs motions for a temporary restraining order and for a preliminary injunction, provides, in part:

> (d) Contents and Scope of Every Injunction and Restraining Order.
> (1) Contents. Every order granting an injunction and every restraining order must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
>
> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

FED.R.CIV.P. 65(d).

"It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969) (citation omitted). A court is powerless to adjudicate a personal claim against a party unless it has

jurisdiction over the party. *Id.* Even a party who is alleged to be in concert or participation with a defendant is to be accorded a hearing for a determination of his role in the matter before a determination is made that the party is subject to an injunction. *Id.* at 112, 89 S.Ct. at 1570; *see E.A. Renfroe & Co., Inc. v. Moran*, 338 F. App'x 836, 840 (11th Cir. 2009) ("The law is clear that a court may not enforce an injunction against a nonparty who act[s] independently of the enjoined party.") (citation and internal quotation marks omitted).

In the Court's discussion regarding Amendment, Count III, the Court recommends that Amendment, Count III, which sought to add as Defendants McCoy and Blakely, be denied. Thus, an injunction cannot be enforced against McCoy and Blakely as they are not a party this action. Furthermore, Warden Crow is not a Defendant in this action even though McConico referred to him as a Defendant in the Motion for Preliminary Injunction. (*Id.* at 3, PageID.90). However, Defendant Commissioner Dunn is mentioned in the Motion for Preliminary Injunction, and he is a Defendant to this action on McConico's Covid-19 claims. (*Id.*; Doc. 10).

Defendant Dunn is mentioned because he has "superior responsibility" over McCoy and Blakely who are "untrained, have no respect for ins[t]itutional regulations[,] or ha[s] no control of these employees"; these employees do not know his or their constitutional rights because they violate his right to privacy when he receives mail from the court or an attorney by opening it outside of his presence and copying it. (Doc. 34 at 3, PageID.90). He maintains that Defendant Dunn is

15

essential to ensure that McCoy and Blakely do not violate his right to confidential communications with the courts and attorneys. (*Id.*).

However, the focus of McConico's Motion for Preliminary Injunction is to prevent his transfer from Easterling because it would be done in retaliation and would moot his claims. On the other hand, the allegations against Defendant Dunn are concerned with McConico's confidential communications being opened outside of his presence and copied, which is not connected to his request not to be transferred. These allegations against Defendant Dunn are an independent claim that should be brought in a complaint. But if McConico was attempting to hold Defendant Dunn responsible for McCoy's and Blakely's actions in an independent claim, such a claim would fail because liability in a § 1983 action cannot be imposed against someone solely for a subordinate's actions based on vicarious liability or *respondeat superior*. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Moreover, the Motion for Preliminary Injunction containing the allegations against Defendant Dunn is not verified. *Palmer v. Braun,* 155 F. Supp.2d 1327, 1331 (M.D. Fla.) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings."), *aff'd*, 287 F.3d 1325 (11th Cir. 2002). McConico's Declaration in Support of Motion for Preliminary Injunction, however, is signed under penalty of perjury, but it contains no reference to Defendant Dunn. (Doc. 34 at 8, PageID.95). Thus, McConico's unverified allegations are insufficient to make Defendant Dunn a party to the Motion for Preliminary Injunction. *CS Business Sys., Inc. v. Schar*,

2017 WL 14449683, at *2 (M.D. Fla. 2017) (unpublished), *adopting*, 2017 WL 1426627 (M.D. Fla. 2017).

Based on the foregoing reasons, McConico's Motion for a Preliminary Injunction is due to be denied.

### 2. Absence of Irreparable Injury.

Alternatively, irreparable harm and inadequacy of legal remedies are the bases for injunctive relief in the federal courts. *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). An irreparable injury is one that "cannot be undone through monetary remedies." *Id.* And the irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.*

The criteria for issuance of injunctive relief require the movant show:

> (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

*Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985). "[A] preliminary injunction is an extraordinary and drastic remedy [,]" which will not be granted unless the movant carries the burden of persuasion as to all four prerequisites. *Id.* (citation and quotations marks omitted).

Turning to the element requiring that McConico will suffer irreparable injury unless the injunction issues, McConcio has not satisfied the burden of persuasion on

17

this element. As pointed out in Judge's Moorer's order, McConico has failed to show irreparable injury, loss, or damage. (Doc. 35 at 2, PageID.106). The order further held:

> While the Court certainly takes Plaintiff's argument seriously regarding retaliatory transfers in response to protected activity, his alleged irreparable injury is his inability to "prosecute this litigation and assist other inmates in their right to access to court by aiding them in their preparation of pleadings and complaints." Doc. 34 at 5. It must be noted that Plaintiff is not seeking to enjoin ADOC Defendants from preventing him access to a law library, Plaintiff is seeking to prevent them from transferring him out of Easterling Correctional Facility. Plaintiff has not demonstrated how a transfer would prevent him from prosecuting this action, only that ADOC Defendants' "rotational transferring him 2-3 times within a year in order to prevent him from assisting other inmates with preparing their pleadings, complaints and requiring other inmate to learn their Constitutional Amendments." Doc. 34 at 1. However, "[p]risoners do not have a First Amendment right to provide legal assistance to fellow prisoners." *Taylor v. McSwain*, 335 F. App'x 32, 33-34 (11th Cir. 2009) (citing *Shaw v. Murphy,* 532 U.S. 223, 225-32, 121 S.Ct. 1475, 1477-80, 149 L.Ed.2d 420 (2001)).
> Further, Plaintiff has failed to show that a transfer from Easterling Correctional Facility is imminent, and not merely speculative. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("The injury must be 'neither remote nor speculative, but actual and imminent' [. . . ] An injury is 'irreparable' only if it cannot be undone through monetary remedies.") Since Plaintiff has failed to show a threat of an imminent and irreparable injury, the request for a temporary restraining order fails.

(Doc. 35 at 2-3, PageID.106-107).

Likewise, the undersigned does not find an injury that was described as

18

imminent. McConico's allegations are merely speculative, lacking specificity, and simply describe past conduct of unidentified individuals who transferred him, except for Defendant Cook's action of transferring him. Furthermore, no showing was made that a transfer would prevent McConico's litigation of this action, and as noted, McConico has no right to provide legal assistance to other inmates, *Taylor v. McSwain,* 335 F. App'x 32, 35 (11th Cir. 2009). Moreover, if the Court was to issue an injunction for McCoy not to transfer McConico from Easterling in retaliation for his legal activities, if she has the authority, alone, to order a transfer of McConico, which was not shown, such an injunction would be an "obey the law" injunction, which is unenforceable. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999) (holding that an injunction to enjoin the city from discriminating in its annexations decisions based on race would simply be instructing the city to "obey the law," which would not satisfy Rule 65(d)'s specificity requirements and be capable of enforcement). Thus, McConico has failed to carry his burden of persuasion on the element that he will suffer irreparable injury unless an injunction issues.

Therefore, McConico's Motion for Preliminary Injunction (Doc. 34, PageID.88) is due to be denied for his failure to carry his burden of persuasion on all four elements required for injunctive relief to issue.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything

in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 15th day of July, 2021.

/s/ **KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**