IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES MCCONICO, JR., # 117395,** : | |
|   **Plaintiff,** : | |
| vs. : | CIVIL ACTION 20-0314-TFM-N |
| **MARY COOK,** *et al.*, : | |
|   **Defendants.** : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(1). After careful review, it is recommended that McConico's Motion for Leave to File Amended Complaint (Doc. 39, Page ID.266) (to which the third amended complaint is attached) and Motion to Add Defendants (Doc. 41, PageID.280) be denied.

### I. Proceedings.

### A. Background.

When McConico filed his complaint on May 5, 2020, he met 28 U.S.C. 1915(g)'s exception - he was in imminent danger of serious physical injury - so he was allowed to proceed *in forma pauperis* in this § 1983 action. In the first

amended complaint, which he was ordered to file on this Court's § 1983 complaint form after his action's transfer here, he complained about a Covid-19 outbreak at Fountain Correctional Facility ("Fountain") and the sufficiency of the response of Defendants Governor Ivey, Commissioner Dunn, and Warden Cook to protect him and to provide reasonable medical care. (*Id.* at 4, 8, PageID.14, 18). Almost seven months later, on November 18, 2020, McConico file a Motion to Amend Civil Complaint, (Doc. 18, PageID.41), which was treated as a supplemental complaint. (Doc. 38 at 3-5, PageID.248-250). In the supplemental complaint, he complained about being retaliated against by Defendant Cook when she had him transferred from Fountain to Easterling Correctional Facility ("Easterling") in the Middle District of Alabama for exercising his right of access to courts by prosecuting this action and advising other inmates in the law library. (Doc. 18 at 2, PageID.42).

On March 11, 2021, Defendants Ivey, Dunn, and Cook were sent the Notice of Lawsuit and Request for Waiver of Service and Summons, along with the first amended complaint, as supplemented ("operative complaint"), and Defendants Ivey and Dunn filed their Answer and Special Report on July 9, 2021. (Doc. 37, PageID.111). To date, Defendant Cook has not been served. (Doc. 37 at nn.1&2, PageID.111; *cf.* Docs. 24, 25, PageID.61, 63).

On June 11, 2021, more than year after this action's filing, McConico filed Amendment, Count III ("second amended complaint"), against Easterling's Deputy Warden McCoy and Mail Clerk Blakely for retaliating against him for exercising his right of access to courts and for assisting other inmates in preparing their criminal

pleadings and petitions during his incarceration at Easterling. (Doc. 31, PageID.73). On July 16, 2021, it was recommended that the second amended complaint be denied due, in part, to the claims arising from a different occurrence or transaction and having different questions of facts or law than the claims in the operative complaint and naming other persons as Defendants who were in another District. (Doc. 38 at 9-12, PageID.254-257).

Recently, McConico notified the Court that he has been transferred from Easterling to Hamilton Aged and Infirmed Correctional Facility ("Hamilton A & I") in Hamilton, Alabama, in the Northern District. (Doc. 44, PageID.290).

### B. Motion for Leave to File Amended Complaint (Doc. 39, PageID.266) and Motion to Add Defendants Commissioner Jeff Dunn, Institutional Coordinator Cheryl Price, Warden John Crow, and Classification Specialist Truss (Doc. 41, PageID.280).

In these motions (jointly "motion"), McConico seeks to add as Defendants, Commissioner Jeff Dunn, Warden John Crow, and Institutional Coordinator Cheryl Price, "acting in their official capacities," as indispensable and necessary parties to stop the criminal acts and retaliatory conduct directed toward him by McCoy and Blakely when they "punish[] him and depriv[e] him of access to court because he . . . petition[ed] the government for . . . redress of his grievances due to COVID-19 and retaliatory conduct." (*Id.* at 2, PageID.267). He also alleges new claims against Deputy Warden McCoy and Mail Clerk Blakely, (who were named as Defendants in his prior amendment[1]), in that they "are working in concert to chill [his] right to

---

[1] In the Report and Recommendation, entered July 16, 2021, it was recommended that Plaintiff's Motion to Add Defendants Deputy Warden Monica McCoy and Mail Clerk

3

petition the government for redress of grievances [when they] began new tactics of retaliatory conduct to violate [his] constitutional rights." (*Id.* at 1, PageID.266). In the Motion to Add Defendants Commissioner Jeff Dunn, Institutional Coordinator Cheryl Price, Warden John Crow, and Classification Specialist Truss (Doc. 41, PageID.280), Truss is included as a Defendant whereas previously she was not mentioned in his Motion for Leave to File Amended Complaint. (Doc. 39 at 1-2, PageID.265-266)

### 1. Count IV.

In the third amended complaint, which is attached to the Motion for Leave to File Amended Complaint (Doc. 39-1), in Count IV, McConico alleges when McCoy was served with a copy of his "Leave to Amend" and Motion for a Temporary Restraining Order and Preliminary Injunction (*see* Docs. 31-34), she retaliated against him to deny him access to courts and due process of law by the committing the following acts. (Doc. 39-1 at 1). In the law library, she listened to other inmates and McConico discuss their strategy for amending the present Covid-19 litigation. (*Id.*). Then, she "enlisted the services of COI Jones to order plaintiff to leave the law library for no reason." (*Id.*). "The following day, McCoy enlisted the services of employee Classification Specialist Truss to copy his legal mail on the false premise that the Attorney General's Office. . . does not serve inmates/McConico copies of their pleadings prepared and sent to the court." (*Id.* at 1-2).

---

Blakely (Doc. 33, PageID.83) and Motion for Leave to File an Amended Complaint (Doc. 32, PageID.78) be denied. (Doc. 38, PageID.246).

On June 24, 2021, McCoy closed the law library and called the law clerks to her office. (*Id.*). She admonished them for allowing McConico in the law library because she previously told them he needed her express permission to there. (*Id.*). A law clerk told her that Warden Crow said that she could not deny McConico access to the law library and that he would talk to her. (*Id.*). McCoy asked the law clerks if McConico had more power than she did and if Warden Crow told the law clerks that McConico had access to the law library "in lieu of her order." (*Id.*). "Out of retaliation, and no other reason, McCoy and all other Defendants acted in concert to deprive [him] and other inmates access to court in order to prevent them from filing the next amendments regarding the Covid-19 virus." (*Id.*). McCoy allegedly lacked a penological reason for closing the law library for four days and reopening it on June 29, 2021, with "convoluted requirements" to obtain access, which were falsely premised on security. (*Id.*). McConico avers that Alabama lacks a legal assistance program, a trained law clerk at Easterling, and secondary authorities in the segregation and hospital units and mental health holding cells. (*Id.*).

Due to the original law library in Building #1300 being destroyed by fire, the law library was moved to an area adjacent to the prison administration.[2] (*Id.* at 3). No officer is currently assigned to the law library. (*Id.*). McConico asserts that he cannot adequately litigate his criminal and civil cases due to McCoy's security restrictions on his usage of the law library, which are meant to stop his Covid-19 action and to assist Defendant Cook's defense, and which lack penological

---

[2] No date was provided for the fire or the move.

justification, thereby denying "his right to petition the government for redress of grievances." (*Id.*). McConico claims that the reason given for the restrictions is security, which is "pretextual" because generally 12 of the same inmates out of 1400 inmates at Easterling use the law library. (*Id.*). McConico further claims that it is a "criminal act" to deny him access to courts and usage of the law library to petition the government in the name of security without fear of punishment, retaliatory transfer, or an invasion of privacy in his legal mail. (*Id.* at 6).

### 2. Count V.

In Count V, McConico realleges Counts I and IV and alleges that he requested Defendants Dunn, Price, and Crow to stop McCoy and Blakely "from their retaliatory and criminal acts in violation of the . . . Constitution." (*Id.* at 4). He alleges that these three supervisors know that McCoy does not know inmate constitutional rights or is untrained and they support her criminal activities against him to deprive him access to courts and due process of law by retaliating against him for his exercise of his right to assist other inmates in the preparation of their pleadings and for his exercise of his right to petition the government for redress of his grievances. (*Id.*). McConico pointed out in written complaints and civil litigation that McCoy is violating standard operating procedures and criminal, state, and federal law. (*Id.*). He contends that Defendants Dunn, Price, and Crow did not take any steps to investigate or determine if the McCoy's "pretextual closure and fraudulent security concerns serve any penological objectives" in closing the law library and placing restrictions on access. (*Id.* at 7).

### 3. Count VI.

In Count VI, McConico realleges Counts I through V of the complaint and alleges that when Blakely returned to work on Monday, June 28, 2021, she continued to follow McCoy's directions by seizing and copying McConico's legal mail and taking it to McCoy. (*Id.* at 7). That day, Blakely opened his legal mail, told him to leave the room, and read it. (*Id.* at 8). McConico told her she could have it and left. (*Id.*). The next day, she asked if he wanted his mail. (*Id.*). McConico told her that "you can't seize my legal mail, order me out of your office, sit down read or make copies of it and give it to Warden McCoy." (*Id.*). She asked McConico if he told McCoy about this, saying that she only had done what McCoy ordered her to do. (*Id.*). McConico said, "Yes." (*Id.*). He said that their criminal acts were going to stop because he does not lose his constitutional rights due to imprisonment. (*Id.*). Blakely apologized and weakly denied the reading of his mail. (*Id.*).

A lone request for relief is found at the end of Count VI. (*Id.* at 6). McConico requests a declaration that McCoy, Blakely, Dunn, Price, and Crow violated his constitutional rights; an injunction mandating the cessation of criminal conduct of Cook, McCoy, and Blakely and of the rules for Easterling law-library usage and the demotion of McCoy; and an award of $200,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.* at 6-7).

### 4. Count VII.

In Count VII, McConico realleges Counts I through VI and alleges that as of June 15, 2021, inmates have been tested for Covid-19 and given a two-step

vaccination for prevention. (*Id*.). He asserts that three additional strains of Covid-19 have started killing Americans. (*Id.* at 8). He maintains "Defendants have no cure, vaccination, means to provide social distancing ([which] is the only medical treatment against the three new strains of the COVID-19 virus) because of overcrowding within the Alabama Department of Corrections." (*Id*.). "Defendants" negligently and with deliberate indifference have begun moving inmates within the prison system and transferring county jail inmates and out-of-state inmates, even though they know no medical treatment exists against the new Covid-19 strains. (*Id.*). Furthermore, McConico contends that "Defendants" plan on subjecting high-risk inmates to visitation with free-world persons, potential carriers of the three new strains. (*Id*.). Whereas other states and the federal Department of Corrections instituted Covid-19 protocols that provide for the release of high-risk inmates outright or extended release with monitors, which is the only available medical treatment for the three new strains of Covid-19. (*Id*.). Implementing these protocols, he maintains, would reduce the prison population, allow for social distancing, and protect him, a high-risk inmate. (*Id.* at 9). No request for relief is associated with this Count.

## II. Analysis.

### A. Counts IV-VI – Violation of Rule 20(a).

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings and instructs that "[t]he court should freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). When ruling on a motion to

amend, "[a] court may consider several factors when deciding whether to grant a motion to amend, including undue delay, bad faith or dilatory motive..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (citations and internal quotation marks omitted and alterations in original). Permission to amend may be denied when the claim, as amended, is subject to dismissal because the claim is futile. *Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441, 444–45 (11th Cir.1985). "[F]utility can refer either to the fact that the joinder rules are not met or to a finding that the claims to be added by or against the party to be joined would be subject to dismissal." *Dahdouh v. Road Runner Moving & Storage Inc.,* 2021 WL 1623027, at *2 (S.D. Fla. 2021) (unpublished). Furthermore, the Court is also under a duty pursuant to 28 U.S.C. § 1915(e)(2)(B) to screen complaints and amendments filed by prisoners and to dismiss the claims that are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

Turning to Counts IV-VI, McConico, as a *pro se* plaintiff, is required to conform to the Federal Rules of Civil Procedure. *Albra v. Advan, Inc.* 490 F.3d 826, 829 (11th Cir. 2007). Rule 20 controls the joinder of parties in a federal civil action. FED.R.CIV.P. 20. Rule 20(a)(2) provides that persons "may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in

the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2)(A)&(B). When Rule 20(a)(2) is not satisfied, misjoinder has occurred, and Rule 21 allows the Court, on its own, at any time, "on just terms, [to] add or drop a party [and] the court may also sever any claims against a party." FED.R.CIV.P. 21. *See Hartley v. Clark,* 2010 WL 1187880, at *3 (N.D. Fla. 2010) (unpublished) ("Rule 20 refers to the same transaction or occurrence not to similar transactions or occurrences."), *adopting with opinion*, 2010 WL 1187879 (N.D. Fla. 2010); *see also Alexander v. U.S.*, 2015 WL 4133309, at *6 (N.D. Ala. 2015) (unpublished) (finding claims asserted against out-of-state detention centers are unrelated to a claim against an Alabama detention center and to themselves and therefore misjoinder occurred); *Skillern v. Ga. Dep't of Corr.,* 2006 WL 3246687, at *6 (N.D. Ga. 2006) (unpublished) (denying the proposed first and second amendments that alleged various transactions involving new defendants because they were distinct from the claims in the original complaint and do not involve a question of fact or law common to all defendants and were an improper attempt to join claims to circumvent § 1915(g)'s three-strikes provision); *Koehn v. Denham*, 2017 WL 11488634, at *2 (D. Colo. 2017) (unpublished) (denying the second amended complaint because new claims based on retaliation were not shown to be connected to his original claims and would add new defendants thereby violating Rule 20(a)); *see also Smith v. Warden, Hardee Corr. Inst.,* 597 F. App'x 1027, 1030 (11th Cir. 2015) (dismissing the complaint for

noncompliance with Rule 20(a) when the complaint contained unrelated claims against different defendants).[3]

Warden John Crow and Institutional Coordinator Cheryl Price were not previously named as Defendants, but Dunn was named as a Defendant in the operative complaint on a claim concerning ADOC's response to Covid-19 at Fountain. (Doc. 10 at 4-6, 8-9, PageID.14-16, 18-19). The certificate of service for the present motion indicates that Price and Dunn are in Montgomery, Alabama, in the Middle District of Alabama, and Crow is in Clio, Alabama, in the Middle District of Alabama. (Doc. 39-1 at 10). The claims in the third amended complaint against McCoy and Blakely are concerned with acts of retaliation for filing a lawsuit, opening legal mail, and denying access to courts through law-library limitations, all of which occurred in the Middle District of Alabama at Easterling, and against Dunn, Price, and Crow for failure to intervene in the incidents in the Middle District. Any connection to the operative complaint is not shown, as the facts in the third amended complaint are different from the facts in the operative complaint and do not arise from the same transaction or occurrence and concern different questions of facts and law that are not common to all Defendants.

This conclusion is supported by the fact that in the third amended complaint, Defendant Cook's name is mentioned only twice. One instance is in the *ad damnum* clause. (Doc. 39-1 at 6). The other reference is to McCoy assisting Cook in her

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

defense of the present lawsuit. (Doc. 39-1 at 3). But, according to McConico in the second amended complaint, McCoy was acting of her *own accord* to help her friend Cook "to prevent the successful litigation of this case." (Doc. 31 at 3, PageID.75; *see* Doc. 39-1 at 3). Thus, these claims against McCoy and Blakely for retaliation against him for prosecuting this lawsuit, for opening his legal mail, and for denying him access to courts, and the claims against Dunn, Price, and Crow for failure to intervene do not arise from the same transaction or occurrence in the operative complaint. In addition, a straightforward failure-to-intervene claim is not applicable to a non-excessive force claim. *See Roddy v. City of Huntsville, Ala.,* 947 F. Supp.2d 1271, 1300 (N.D. Ala.) (a duty to intervene has not been extended to a situation beyond excessive force), *aff'd,* 580 F. App'x 844 (11th Cir. 2014). Nonetheless, McConico alleged that Warden Crow did intervene to override McCoy's order not to allow McConico access to the law library without her permission. (Doc. 39-1 at 2).

Accordingly, these claims violate Rule 20(a)'s requirement that they "arise out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2)(A)&(B). Additionally, the failure-to-intervene claims fail to state a claim upon which relief can be granted. *Roddy, supra.* Thus, to add the claims and Defendants found in Counts IV-VI would be an act in futility.

### B. Count VII - Shotgun Pleading and Lack of a Causal Connection.

Furthermore, in Counts V-VII, McConico realleges all preceding Counts.

(Doc. 39-1 at 4-8). This type of pleading violates Rule 8(a)(2) or Rule 10(b), or both, and is "disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1320 (11th Cir. 2015). McConico's realleging of prior counts is the most common type of shotgun pleading. *Id.* at 1320. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Aside from McConico's allegations realleging prior Counts, his allegations fall into other shotgun-pleading categories identified in *Weiland*, particularly in Count VII when he asserts broad, vague, conclusory claims against "the Defendants" without specifying which Defendant is responsible for which act or omission that violates his constitutional rights. (Doc. 39-1 at 8).

In addition, in Count VII, which concerns moving inmates during the Covid-19 pandemic, when McConico refers only to "the Defendants," a claim has not been stated under § 1983. (*Id.*). Section 1983 "requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cty., Fla.,* 419 F.3d 1160, 1165 (11th Cir.) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)), *cert. denied,* 547 U.S. 1112 (2006). And a defendant must be the proximate cause of a plaintiff's injuries; that is, there must be no intervening, independent cause for the injuries that, breaks the chain of causation. *Id.* Because no specific Defendant has been identified, and no facts are connected to a Defendant regarding inmate movements

and the movements' impact on McConico, McConico has failed to state a § 1983 claim upon which relief can be granted. *Zatler v. Wainwright,*, 802 F.2d 397, 401 (11th Cir. 1986) (finding that a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted in a § 1983 action). Thus, Count VII fails to state a claim upon which relief can be granted.

Furthermore, other issues are present in the third amended complaint that demonstrate other aspects of the amendment's futility. In McConico's request for relief for Counts IV-VI (Doc. 39-1 at 6-7), he requests that McCoy's and Blakely's law-library usage rules be enjoined. This request is now moot due to his transfer to Hamilton A & I away from Easterling's law-library rules. (Doc. 39-1 at 6-7). *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.), *cert. denied*, 488 U.S. 1046 (1989). Because McConico sued Dunn, Price, and Crow in their official capacities (Doc. 39 at 2, PageID.267), his request for damages from them is frivolous. *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Resources,* 532 U.S. 598, 609 n.10, 121 S.Ct. 1835, 1842 n.10, 149 L.Ed.2d 855 (2001) ("States and state officers acting in their official capacity are immune from suits for damages in federal court"). Additionally, to the extent that McConico seeks the demotion and retraining of McCoy, that relief is not available to him as federal courts do not have authority over state officials' employer-employee relationships. *See Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir.)("We all understand, of course, that federal

courts have no authority to address state officials out of office or to fire state employees or to take over the performance of their functions."), *rev'd in part on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781 (1978); *Harris v. Whitehead*, 2007 WL 2300964, at *1 (M.D. Ala. 2007) (unpublished) (holding that the federal court had no authority to discharge prison officials as that decision was for the supervisors to make); *Body v. Thornton*, 2013 WL 1915014, at *5 (S.D. Ala. 2013) (unpublished) ("A federal court does not involve itself in a defendant's employment relationship with his employer.").

### III. Conclusion.

Based upon the foregoing reasons, it is recommended that McConico's Motion for Leave to File Amended Complaint (Doc. 39, Page ID.266) and Motion to Add Defendants (Doc. 41, PageID.280) be denied because Counts IV-VII are futile.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 29th  day of September, 2021.

/s/ *Katherine P. Nelson*
**UNITED STATES MAGISTRATE JUDGE**